OPINION.
The defendant-appellant, James Michael Clowers, appeals his conviction for aggravated murder in connection with the December 6, 1997, death of twenty-seven-year-old Floyd Patterson, the husband of a woman with whom Clowers was having an affair at the time of the murder.
The record reflects that in the early morning hours of December 6, 1997, Floyd Patterson had planned to depart on a hunting trip with his next-door neighbor, Joseph Shipp. Patterson lived in his Hooven, Ohio, home with his wife, Michelle Patterson, and their two minor children. Shipp telephoned the Patterson residence at approximately 5:15 a.m. to make sure that Floyd was ready to leave on the hunting trip. According to Shipp, a male voice answered the phone and groaned.
Shipp then went over to the Patterson residence and noticed that the front door was ajar. At about the same time, Michelle Patterson placed a 911 call in relation to her discovery of her husband's body. Shipp went inside the Patterson residence upon hearing Michelle screaming. Shipp observed Floyd lying on the floor with a gaping neck wound. Floyd Patterson was pronounced dead at the scene.
Later that morning, Michelle Patterson was taken to the sheriff's patrol headquarters and questioned for approximately thirteen hours, at the end of which she provided the authorities with a taped confession.
Clowers was also taken to the patrol headquarters later that day and was questioned for approximately eight hours. He was released later that evening. On December 8, 1997, Clowers was taken from his residence by deputy sheriffs and placed under arrest on unrelated sex charges. While at patrol headquarters he was again questioned about Floyd Patterson's murder. Clowers eventually provided the investigators with a taped confession.
Both Michelle Patterson and Clowers were charged with aggravated murder in connection with the death of Floyd Patterson. Each filed a motion to suppress the confession each had given to the sheriff's department. After a two-day hearing, the trial court granted both motions, resulting in the exclusion of the confessions made by Michelle Patterson and Clowers.
The state's subsequent motion to sever the trials of the two defendants was granted. Prior to trial, the state also filed a motion in limine to prohibit the use of Michelle Patterson's confession at Clowers's trial and, likewise, to prohibit the use of Clowers's confession at Michelle Patterson's trial. The state's motion further requested that the court's order not apply to statements that would be admissible under Evid.R. 613(B) as prior inconsistent statements for impeachment purposes. The state's motion was granted. Shortly thereafter, an entry of dismissal was entered with respect to the indictment against Michelle Patterson, leaving only Clowers to stand trial for the murder of Floyd Patterson.
After a week-long jury trial, Clowers was found guilty of aggravated murder. He was sentenced to life imprisonment with parole eligibility after twenty years. Clowers timely filed a notice of appeal, and he now presents four assignments of error for our review.
Clowers's first two assignments of error are interrelated, as both attack the exclusion of Michelle Patterson's confession at the trial. In the first assignment of error, Clowers contends that the trial court erred by granting the state's motion in limine and excluding Michelle Patterson's taped confession to the murder. In the second assignment, Clowers raises the alternative argument that he was denied the effective assistance of trial counsel due to counsel's failure to proffer evidence or otherwise preserve an objection to the ruling on the motion in limine regarding Michelle Patterson's confession. Based on the reasons that follow, neither assignment has merit.
A motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial, and as such it is a tentative, interlocutory, and precautionary ruling. In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in the actual context of the trial. Finality does not attach when the motion is granted. Defiance v. Kretz
(1991), 60 Ohio St.3d 1, 4, 573 N.E.2d 32, 35, citing State v.Grubb (1986), 28 Ohio St.3d 199, 201-202, 503 N.E.2d 142, 145. Rather, it is incumbent upon a party who has been temporarily restricted from introducing evidence by virtue of a ruling on a motion in limine to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal. State v. Grubb,supra, at paragraph two of the syllabus.
In the instant case, the record shows that Clowers failed to proffer Michelle Patterson's confession or to otherwise seek its admission at trial. Accordingly, Clowers effectively waived his right to raise on appeal any argument concerning the trial court's ruling with respect to the motion in limine or the admissibility of the confession. See Garrett v. Sandusky (1994), 68 Ohio St.3d 139,624 N.E.2d 704; State v. Grubb, supra. Thus, Clowers's first assignment of error is overruled.
We next turn to Clowers's second assignment, which contends that he was denied a fair trial due to the ineffective assistance of defense counsel. Specifically, Clowers alleges that his trial counsel improperly failed to proffer, during Clowers's presentation of evidence, the taped confession of Michelle Patterson.
A convicted defendant who claims that counsel's assistance was so defective as to require reversal must show (1) deficient performance by counsel and (2) resulting prejudice. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064. The performance inquiry requires the reviewing court to ask whether, under the totality of the circumstances, "counsel's representation fell below an objective standard of reasonableness." Id. at 688,104 S.Ct. at 2064. The court must indulge a strong presumption that counsel's conduct fell within "the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. at 2065. The prejudice inquiry involves a determination whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."Id. at 694, 104 S.Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. Id.
Clowers essentially argues that Michelle Patterson's confession was admissible under Evid.R. 804(B)(3). According to Clowers, counsel's failure to proffer the confession for admission at trial constituted ineffective assistance of counsel resulting in prejudicial error.
Hearsay evidence is not admissible unless it is subject to a relevant exception. Evid. R. 802; State v. Steffen (1987),31 Ohio St.3d 111, 119, 509 N.E.2d 383, 392. Evid. R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 804(B)(3) provides an exception to the hearsay rule for statements against penal interest made by declarants who are unavailable as witnesses:
 A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far intended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
Accordingly, pursuant to Evid.R. 804(B)(3), out-of-court statements that would otherwise constitute inadmissible hearsay may be admissible at trial when the following three requirements are demonstrated: (1) the declarant is unavailable as a witness; (2) the statement was against the declarant's interest and tended to subject the declarant to criminal liability; and (3) if offered to exculpate the accused, the statement is corroborated by circumstances clearly indicating its trustworthiness. See Statev. Gilliam (1994), 70 Ohio St.3d 17, 20, 635 N.E.2d 1242,1245-1246; State v. Long (May 8, 1997), Cuyahoga App. No. 70739, unreported; State v. Akers (Apr. 4, 1997), Portage App. No. 95-P-0073, unreported.
Thus, in the case before us, a demonstration of all three of the above factors would have been required to hold Michelle Patterson's confession admissible at Clowers's trial. The record is devoid of any indication that Michelle Patterson was, in fact, unavailable as a witness. Therefore, the record does not demonstrate the first of the three-prong test set forth above. Additionally, although the statement provided by Michelle Patterson did in fact expose her to criminal liability, thus satisfying the second prong of Evid.R 804(B)(3), the record, again, fails to demonstrate sufficient "corroborating circumstances clearly indicating the trustworthiness" of her statement to fulfill the third element of Evid.R. 804(B)(3).
As we noted earlier, prior to the dismissal of the aggravated murder charge against Michelle Patterson, the trial court granted her motion to suppress her confession. The court's ruling was based on the circumstances under which she provided it.
Michelle Patterson had been taken to the interrogation room shortly after the murder, was kept there for many hours, having had very little sleep and food, and was separated from her children. Michelle Patterson testified at the suppression hearing that she did not feel that she was at liberty to leave the police headquarters and that she only provided the officers with the confession because they had told her that she would be able to obtain a low bond and go home to her children. The trial court cited many reasons for suppressing Michelle Pattterson's statement, but primarily emphasized the fact that she was not given her Miranda rights until approximately 8:00 p.m., which was hours after she became a "suspect."
Moreover, the record reflects that police had obtained an initial taped statement from Michelle Patterson approximately six hours before taping the confession at issue. In the first statement, Michelle Patterson's version of the events went essentially as follows: she heard the phone ring at about 5:20 a.m. and answered it at the same time that her husband did on another extension; she heard a short conversation between her husband and next-door neighbor Shipp; she heard her husband open the front door, yell at someone and then say, "Oh my God"; she then heard a gasping sound and walked into the living room and discovered her husband's body.
This initial taped statement clearly contradicted the version of facts provided by Michelle Patterson in the confession that was taped six hours later, wherein she stated that she argued with her husband and stabbed him with a kitchen knife. The circumstances leading to her confession — the length of time that she was interrogated, her inability to communicate with her family during the interrogation process, and her desire to go home to her children, who had just lost their father — can hardly be said to "corroborate the trustworthiness" of the confession within the meaning of Evid.R. 804(B)(3).
In the absence of two of the three criteria set forth in the hearsay exception provided by Evid.R. 804(B)(3), we conclude that the confession made by Michelle Patterson constituted inadmissible hearsay. Therefore, even if trial counsel had properly preserved an objection to the trial court's ruling with respect to the motion in limine by proffering the confession, the confession would have nevertheless been inadmissible. Accordingly, Clowers's claim of ineffective assistance of counsel based upon counsel's failure to proffer the confession for use at trial must fail, as Clowers has failed to demonstrate prejudice resulting from the allegedly deficient performance. The second assignment of error is therefore overruled.
We address Clowers's third and fourth assignments of error, challenging the sufficiency and weight of the evidence, jointly. Where substantial evidence is presented by the state to support all elements of the charged offense, and that evidence is sufficiently probative of guilt, this court will not reverse on either the sufficiency or the weight of the evidence. See Statev. Barnes (1987), 25 Ohio St.3d 203, 495 N.E.2d 922; State v.Thompkins (1977), 78 Ohio St.3d 380, 678 N.E.2d 541; State v.Perkins (May 28, 1999), Hamilton App. No. C-971032, unreported.
Here, the state presented overwhelming evidence that Clowers purposely killed Floyd Patterson with prior calculation and design pursuant to R.C. 2903.01.
The evidence adduced at trial demonstrated that at the time of the killing Clowers and the victim's wife were having a sexual affair. Clowers had told several people that he did not like the way that the victim treated Michelle Patterson, and he had voiced numerous threats to kill Floyd Patterson. Clowers's friend Ruth Dalton testified that she and her husband, a cab driver, gave Clowers a ride from the Colerain area to Hooven, Ohio, on the night of the murder. Clowers had told them that he was going to Hooven to attend an all-night party and that he needed to be there by 5:00 a.m. Prior to driving to Hooven, the trio ate at an all-night restaurant. While seated at the restaurant, Dalton testified, she observed a long knife attached to Clowers's belt. Dalton testified that Clowers's left a stun gun in the backseat of the cab when he left the vehicle.
Another witness, Jan Poynter, who lived in Hooven, testified that, at about 6:00 a.m. on the morning of December 6, 1997, as he left his residence to go hunting, he heard rustling in nearby bushes and then saw a man whom he later identified as Clowers emerge from the bushes. Clowers told Poynter that he had a torque wrench tucked inside his jacket because he had just assisted a friend in fixing a car. Another witness, a cab driver, identified Clowers as the man whom he had picked up at a gas station in Hooven at about 7:25 a.m. on December 6, 1997.
Thus, upon review of the entire record, we hold that the evidence presented by the state was sufficient as a matter of law to support a conviction, and that the conviction was not against the weight of the evidence. The third and fourth assignments of error are overruled, and the trial court's judgment is affirmed.
Judgment affirmed.
 Sundermann, J., concurs.
Painter, P.J., concurs separately.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.